SLEBODNIK v THE GREAT ATLANTIC AND PACIFIC TEA
COMPANY

Docket Nos. 77-2847, 77-2892. Submitted May 10, 1978, at Detroit.—
    Decided October 2, 1978. Leave to appeal applied for.

    Phyllis Slebodnik was injured on June 20, 1964, during the course
        of her employment with the Great Atlantic and Pacific Tea
        Company when she lifted a tray of chickens from under a
        counter. Shortly thereafter she felt pain in her back and legs,
        which eventually led to back surgery. A & P voluntarily
        commenced payment of worker's disability compensation bene-
        fits on June 21, 1964, and terminated these benefits on April 6,
        1974. Phyllis Slebodnik has not worked since the date of her
        back injury.

    On April 22, 1974, Phyllis Slebodnik brought a claim against
        A & P and the Second Injury Fund for further benefits, alleging
        that she suffered a total and permanent disability by reason of
        incurable insanity and the loss of the industrial use of both
        legs. After a hearing, an administrative law judge ruled that
        the claimant was permanently and totally disabled by reason of
        insanity and that she had not lost the industrial use of both
        legs on an organic basis. The Workmen's Compensation Appeal
        Board affirmed that ruling. A & P and the Second Injury Fund
        appeal, urging that the Court of Appeals re-evaluate the defini-
        tion of "incurable insanity" as established in *Sprute v Herlihy
        Mid-Continent Co*, 32 Mich App 574 (1971), and as used by the
        administrative law judge and the appeal board, and that the
        Court of Appeals adopt a more stringent test. *Held:*

    The Michigan Supreme Court has already examined the
        *Sprute* test and has rejected any requirement that the mental
        impairment have any effect upon the employee's wage earning
        capacity. Instead it is required that the mental impairment
        have a significant effect upon the employee's personal nonvoca-
        tional life. The improper test was applied to the instant case.

    The decision of the appeal board is vacated and the matter is
        remanded for further proceedings.

    T. M. BURNS, J., concurred. He suggests that on remand the

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 82 Am Jur 2d, Workmen's Compensation §§ 301, 302.
[4] 82 Am Jur 2d, Workmen's Compensation § 340.

appeal board focus on whether the claimant's mental illness is insanity as provided in the Worker's Disability Compensation Act.

## OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—INCURABLE INSANITY—WORK-RELATED DISABILITY—DISABILITY BENEFITS—STATUTES.

A person who can prove the existence of work-related incurable insanity is entitled to recover worker's disability benefits for a total and permanent disability (MCL 418.361; MSA 17.237[361]).

2. WORKMEN'S COMPENSATION—TOTAL DISABILITY—MENTAL DYSFUNC-TION—INSANITY—IMBECILITY—WORDS AND PHRASES.

A worker's mental illness is "insanity" under the Worker's Disability Compensation Act if he suffers severe social dysfunction, and his intellectual impairment is "imbecility" if he suffers severe cognitive dysfunction (MCL 418.361[2]; MSA 17.237[361][2]).

3. WORKMEN'S COMPENSATION—TOTAL DISABILITY—MENTAL DYSFUNC-TION—INCURABILITY—WORDS AND PHRASES.

A mental dysfunction is "incurable" under the Worker's Disability Compensation Act if it is unlikely that normal functioning can be restored (MCL 418.361[2]; MSA 17.237[361][2]).

### CONCURRENCE BY T. M. BURNS, J.

4. WORKMEN'S COMPENSATION—INCURABLE INSANITY—DISABILITY BEN-EFITS—TEST—FOCUS OF TEST—CASE PRECEDENT.

*The test for determining whether a worker's disability compensation claimant is entitled to benefits for a total and permanent disability for incurable insanity requires the Workmen's Compensation Appeal Board to find, before granting an award, (1) that the worker has a mental or emotional illness, (2) that the illness is work related, and (3) that the illness is expected to be of long duration; focusing on the effect of a work-related mental illness on a worker's employment rather than focusing on whether this illness resulted in a severe social dysfunction is improper in light of recent Supreme Court precedent.*

*Kelman, Loria, Downing, Schneider & Simpson* (by *Ann Curry Thompson),* for plaintiff.

*Lacey & Jones* (by *John L. Salter),* for defendant A & P Co.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for defendant Second Injury Fund.

Before: CYNAR, P.J., and T.M. BURNS and D.C. RILEY, JJ.

CYNAR, J. Defendants appeal separately as of right from a decision of the Workmen's Compensation Appeal Board granting plaintiff's application for worker's compensation benefits for a total and permanent disability. Since the two appeals share common issues and arise out of the same fact situation, they will be disposed of in one opinion at this time.

Plaintiff was injured during the course of her employment on June 20, 1964, when she lifted a tray of chickens from under a counter. Shortly thereafter she felt pain in her back and legs, which eventually led to back surgery. Defendant A & P voluntarily commenced the payment of worker's compensation benefits on June 21, 1964, and terminated these on April 6, 1974. Plaintiff has not worked at all since the date of her back injury.

On April 22, 1974, plaintiff brought the present claim. She alleged that she suffered a total and permanent disability by reason of incurable insanity and the loss of industrial use of both legs. A hearing was held on January 15, 1975, and consisted of plaintiff's testimony and the depositions of five doctors. Plaintiff testified that she continues to feel pain in her back and legs. She added that she also suffers from a nervous condition which arose at the time of the back injury and which has worsened with age. She testified that she had been treated by psychiatrists for some time.

On February 18, 1975, the administrative law

judge ruled that plaintiff was permanently and totally disabled by reason of insanity. In so concluding, he placed heavy reliance upon this Court's decision in *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574; 189 NW2d 89 (1971). He further ruled that plaintiff had not lost the industrial use of both legs "on an organic basis". The appeal board, also relying on *Sprute,* affirmed in a 3 to 2 decision, holding that:

"Plaintiff herein has an employment-related emotional condition which impairs her mental processes, is totally disabling as to gainful employment, has already been of long duration, and appears likely to extend into the indefinite future."

Defendants now appeal from the board's determination, attacking both *Sprute* and the findings of fact of the appeal board.

MCL 418.361; MSA 17.237(361) provides in part:

"(2) Total and permanent disability compensation for which is provided in section 351 means:

"(a) Total and permanent loss of sight of both eyes.

"(b) Loss of both legs or both feet at or above the ankle.

"(c) Loss of both arms or both hands at or above the wrist.

"(d) Loss of any 2 of the members of faculties enumerated in (a), (b) or (c).

"(e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(f) *Incurable insanity or imbecility.*

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury." (Emphasis added.)

Thus, a person who can prove the existence of work-related "incurable insanity" is entitled to recover benefits for a total and permanent disability. In *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574, 579; 189 NW2d 89 (1971), the Court held that one suffers from such insanity "if the occupationally-related mental or emotional illness which impairs the employee's mental processes is of totally disabling proportions and is likely to be of long and indefinite duration, thus making gainful employment impossible".

Defendants presently urge that we re-evaluate this definition of "incurable insanity" and adopt a more stringent test. However, in *Redfern v Sparks-Withington Co,* 403 Mich 63; 268 NW2d 28 (1978), the Supreme Court has undertaken this task for us. There, the Court re-examined the *Sprute* test and modified it in part. The Court rejected the requirements of *Sprute* that the impairment of mental processes be totally disabling, rendering gainful employment impossible. Indeed, the Court totally rejected any requirement that the mental impairment have any effect upon the employee's wage earning capacity.[1] Instead, the Court required that the mental impairment have a significant effect upon the employee's personal, nonvocational life. The Court stated:

"We conclude that a worker's mental illness is 'insanity' if he suffers severe social dysfunction and that a worker's intellectual impairment is 'imbecility' if he suffers severe cognitive dysfunction. Social or cognitive dysfunction is 'severe' if it affects the quality of the worker's personal, nonvocational life in significant activity comparably to the loss of two members or sight of

[1] However, the following comment is noteworthy:
"While evidence of dysfunction in employment is not determinative of eligibility for total and permanent disability benefits it may supplement evidence of nonemployment dysfunction." *Redfern,* at 82, n 15.

both eyes, and is incurable if it is unlikely that normal functioning can be restored." *Redfern,* at 85.

This test was not applied by the appeal board in this case. Rather, the board applied the *Sprute* "wage-earning capacity test" in reaching its decision. Although the appeal board's opinion strongly suggests that the *Redfern* test has been satisfied in the present case,[2] no specific findings of fact have been made as to whether plaintiff suffers from a "severe social dysfunction". Therefore, we find it necessary to reverse the decision of the appeal board and to remand this matter to the appeal board for further findings and, if necessary, for the admission of additional evidence, pursuant to MCL 418.859; MSA 17.237(859). Since further findings of fact are presently required, we decline at this time to review those factual findings previously made by the appeal board.

The decision of the board is vacated and the matter remanded for proceedings consistent with this opinion. Costs to the prevailing party.

D. C. RILEY, J., concurred.

---

[2] The following testimony is quoted in the board's opinion:

" 'Q Doctor, did you obtain a history from her, generally speaking?

" 'A Yes, I did.

" 'Q Would you tell us what that history was.

" 'A This woman was lifting some box or checking or something at the A & P in 1964, June of '64 and experienced a sharp pain down her back and into her left buttock and left leg and since that time has had surgery for a ruptured disc which was subsequent to that experience. And the surgery was, I think, a year later, 1965. *And since that time she's been totally unable to do anything which takes the use of her back muscles; has pain; is very anxious and depressed about the pain that she's suffered since that time; has been withdrawn, asocial, irritable and severely anxious* and her anxiety, I think, has crystalized into a chronic anxiety state at this time.

" 'Q Is that your diagnosis?

" 'A Yes.

" 'Q Chronic anxiety state?

" 'A Yes.' " (Emphasis added.)

T. M. BURNS, J. *(concurring)*. I agree with the majority that the board's application of the now rejected *Sprute*[1] test requires a remand for supplementary fact-finding by the WCAB under the standard announced in *Redfern v Sparks-Withington Co,* 403 Mich 63; 268 NW2d 28 (1978). I write separately to emphasize certain points.

The majority of the board found that:

"Plaintiff herein has an employment-related emotional condition which impairs her mental processes, is totally disabling as to gainful employment, has already been of long duration, and appears likely to extend into the indefinite future. She is permanently and totally disabled under Section 361(2)(f), formerly Section 10(b)(6)."

The *Redfern* test requires the board to find, before granting an award, that a worker has a mental or emotional illness, that the illness is work related, and that the illness is expected to be of long duration. 403 Mich at 79. The board erred in this case by focusing on the effect (of the work-related mental illness which it found) on plaintiff's employment, rather than focusing on whether this illness resulted in a "severe social dysfunction", the new definition of insanity. The proper focus is not on the ability to work, but the ability to function outside the work setting.

In my view, the board has already made sufficient findings on several of the key points. The board, on remand, should focus on whether plaintiff's mental illness is "insanity" as used in MCL 418.361(2)(f); MSA 17.237(361)(2)(f). The change in focus from the work setting to the social setting should not be difficult in this case. I would fully

---

[1] *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574; 189 NW2d 89 (1971).

expect, as the majority apparently does, that the board will find that plaintiff is suffering from a severe social dysfunction and is, therefore, entitled to benefits under the insanity provision.